IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND STACEY, Individually and as Co-Executor of the Last Will of Helen Stacey,<br>            Plaintiff,<br>    v.<br><br>CITY OF HERMITAGE; GARY P. HINKSON, Individually; EDWARD STANTON, Individually; RUSSELL V. PENN, JR., Individually; JEFFREY OSBORNE, Individually; ROBERT S. GOELTZ, Individually; JAMES PAT WHITE, Individually; THOMAS W. KUSTER; H. WILLIAM WHITE, III; CHRISTOPHER FERRY; WATTS & PEPICELLI, Attorneys at Law; JERRY G. CARTWRIGHT, JR., Attorney at Law; RICHARD SEREDAY, ROSEANN SEREDAY, doing business as SEREDAY EXCAVATING,<br><br>            Defendants. | 2:02-cv-1911 |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court for consideration and disposition is DEFENDANTS', CHRISTOPHER FERRY AND WATTS & PEPICELLI, MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b) (*Document No. 147*). Plaintiff has filed a response (*Document No. 151*) and the motion is ripe for disposition.

Factual and Procedural Background

This case arose from the condemnation and subsequent demolition of the home of Plaintiff's mother in November 2000 – over seven years ago. The case has been embroiled in extensive legal wrangling and, as evidenced by the pending motion, is still in the initial pleadings

stage. The entire procedural history will not be reiterated. The original complaint was pro se. On April 15, 2005, counsel for Plaintiff filed an amended complaint. On April 19, 2006, the Court of Appeals issued a second opinion in this case ("*Stacey II*") which affirmed in part and vacated in part the district court's original order of dismissal and remanded for further proceedings consistent with its opinion. *(Document No. 103)*. *Stacey II* held that some, but not all, of Defendants' asserted grounds for dismissal had merit, Opinion at 8, and concluded that the only claims which survived the motions to dismiss were:

> (1) claims under § 1983 against the City defendants and Sereday arising from the demolition; (2) claims under § 1983 against the City defendants arising from the imposition of the lien against the Stacey property; and (3) legal malpractice claims against the Staceys' attorneys.

*Stacey II* at 14. *Stacey II* further directed that Raymond Stacey be afforded an opportunity to amend the complaint to demonstrate standing, Opinion at 9, and instructed Plaintiff to clearly specify the parties to whom he refers in the various claims. Opinion at 11. This Court's Order dated August 1, 2006 instructed Plaintiff to file an amended complaint "limited to the recited surviving claims." On September 15, 2006, after further wrangling, Plaintiff filed a fourth complaint[1] (Document No. 128) against "caption defendants" (the "Amended Complaint").

On January 31, 2008, the Court isssued a Memorandum Opinion which, among other actions, denied Plaintiff's motions to file yet another amended complaint and/or to resurrect the initial pro se complaint. The Court stated, in relevant part:

> Leave to amend the complaint is also denied on the alternative grounds of undue delay, dilatory motive and prejudice. Although the original complaint was pro se, Plaintiff's current counsel entered her appearance almost three years ago and filed an amended complaint in April 2005 and did not allege the instant contract and

---

[1]The third complaint, filed on August 21, 2006, was stricken due to Plaintiff's failure to comply with the Court's orders.

2

> conspiracy claims. Moreover, the procedural history of this case is replete with efforts by Plaintiff to stay or suspend the proceedings, to take improper appeals, to unilaterally assert claims that were specifically barred by this Court and the Court of Appeals, and to generally prolong this case in derogation of the principles articulated in Fed. R. Civ. P. 1. At the risk of repetition, this case is over five years old and has not progressed past the pleadings stage. . . .
>
> Plaintiff will not be permitted to further amend his complaint, except upon unanimous consent of the parties and/or leave of court. Thus, the Amended Complaint filed on September 15, 2006 (Document No. 128), as modified by this Memorandum Opinion and Order, will be the operative statement of Plaintiff's claims.

Subsequently, Defendants Christopher Ferry and Watts and Pepicelli, Attorneys at Law, filed the pending motion to dismiss the claims asserted against them in the Amended Complaint.

Standard of Review

The proper standard for evaluating motions to dismiss has been the subject of two recent binding decisions. In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), all nine justices of the United States Supreme Court agreed that the oft-quoted standard that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" has been retired and "is best forgotten." *Id.* at 1968. The Court explained that a complaint must allege enough "facts" to show that a claim is "plausible" and not merely conceivable. *Id.* at 1965. The term "plausible" is not susceptible of mathematical quantification, but lies somewhere on the rhetorical spectrum between "conceivable" or "speculative" and "probable." Indeed, the *Twombly* Court made a distinction between facts that were merely "consistent" with wrongful conduct and facts that would be "suggestive" enough to render the alleged conduct plausible. *Id.* at 1966. In particular, the Court

upheld dismissal of a complaint alleging an antitrust conspiracy, despite "stray averments" that defendants had entered into an unlawful agreement, explaining that the plaintiff had alleged "merely legal conclusions." *Id.* at 1970. The Supreme Court also emphasized the need for district courts to prevent unjustified litigation expenses resulting from claims that are "just shy of a plausible entitlement." *Id.* at 1967, 1975.

In *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), the Court of Appeals for the Third Circuit further refined the *Twombly* standard. As the Court of Appeals explained, "notice pleading" pursuant to Rule 8(a)(2) remains intact, but requires the pleader to make a "showing" of entitlement to relief, and to give the defendant fair notice of what the claim is and the grounds upon which it rests. A pleader may not simply make a "bare averment that he wants relief and is entitled to it." *Id.* at 233. Labels, conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. *Id.* at 231. Rather, the now-applicable pleading standard is as follows: stating a claim requires a complaint with enough factual matter (taken as true) to raise a reasonable expectation that discovery will reveal evidence of all the necessary elements of Plaintiff's claims. *Id.* at 234.

 Discussion

Despite specific instruction from the Court, the Amended Complaint does not clearly articulate the various claims being pursued and the parties targeted under each theory. Plaintiff contends that he is entitled to assert three independent legal theories as to attorney Christopher Ferry and his law firm, Watts & Pepicelli (collectively, "Defendants"). *See* Plaintiff's Response at 3: "Plaintiffs have preserved their claims of legal malpractice, contract, and conspiracy...."

4

The Amended Complaint contains the following allegations regarding these Defendants:

¶ 4(a): In August and September, 2000, Defendants joined a conspiracy and were willing participants in the City's plan to demolish the Stacey home.

¶ 18: Defendants "were retained by Helen Stacey to handle problems with Hermitage over building code violations with the family home and to help sell the property." Defendants breached their contractual obligations when they: (1) refused to file a trespass action against the City; (2) refused to seek an injunction to prevent demolition of the home; (3) failed to provide assistance in selling the Stacey real estate; and (4) joined in the City's plan to demolish the home. Plaintiff further avers that the statute of limitations on contracts is four years.

¶ 33: Plaintiffs asked Defendants to file an action in trespass and to get an injunction to prevent the demolition. When Defendants failed to act, Plaintiffs rushed to retain defendant Attorney Jerry G. Cartwright, Jr.

¶ 53: The City conspired with Defendants to use the Hermitage Property Maintenance Code to remove the Stacey home, which was "egregiously nonconforming under the City's zoning law." The Amended Complaint avers that the structure "had no front or side yard setbacks, jutted out upon the main commercial highway, and to the City aesthetically seemed to discourage development."

¶ 57: Because the actions and omissions of the malpractice Defendants (defined in the Amended Complaint to include Defendants and attorney Cartwright) injured their respective clients, Plaintiff seeks damages for those injuries.

¶ 64: Because Defendants breached their contractual obligations to Helen Stacey, her estate seeks damages for those injuries.

A. Causes of Action Other Than "Legal Malpractice"

As an initial matter, the Court of Appeals stated clearly and unambiguously in *Stacey II* that the only claims which survived as to "the Staceys' attorneys" were claims for "legal malpractice." Opinion at 14. This Court's Order dated August 1, 2006 instructed Plaintiff to file an amended complaint "limited to the recited surviving claims for the relevant time period(s) set forth in the Opinion." The Amended Complaint alleges that Defendants were the Staceys' attorneys. A "legal malpractice action is distinctly different from any other type of lawsuit brought in the Commonwealth." *Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998). Accordingly, Plaintiff cannot persist in his effort to assert independent claims for breach of contract or civil conspiracy against Defendants. The attempt to assert such claims is contrary to directly-applicable rulings of this Court and the Court of Appeals.[2]

B. Pennsylvania Law Governing "Legal Malpractice" Claims

Plaintiff states that under Pennsylvania law, a claim for legal malpractice must allege: (1) employment of the attorney; (2) a failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence is the proximate cause of damage to Plaintiff. Plaintiff's Brief at 4 *(citing Kituskie*, 714 A.2d at 1029). While accurately stated, this is not a comprehensive explanation of the applicable law. An additional essential element to a legal malpractice cause of

---

[2]In any event, the conspiracy claim is meritless. The applicable statute of limitations has long since run and the claim does not "relate back." *See Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir.2004). Plaintiff cites to ¶¶ 12, 13, 30, 47 and 49 of the pro se complaint, but the pro se complaint was superseded by the First Amended Complaint filed by counsel. In addition, the referenced paragraphs did not provide "fair notice" to Defendants, in that the only substantive allegation was that Defendants failed to file an injunction to prevent the demolition. The breach of contract claim is also without merit, for reasons that will be set forth below.

action is "proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm." *Kituskie,* 714 A.2d at 1030. Further, a plaintiff must prove "a case within a case" by showing that he had a viable claim in an underlying case and that the attorney was negligent in prosecuting that action. *Id.*

Although Plaintiff has briefed only a tort-based "legal malpractice" claim as set forth in *Kituskie*, an assumpsit theory may also be asserted in some situations. In *Duke & Co. v. Anderson*, 418 A.2d 613 (Pa. Super. 1980), the Pennsylvania Superior Court explained that clients have a "choice" to sue their attorney under either trespass or assumpsit, although both may be asserted in the same complaint. *Id.* The trespass theory is based on a failure to exercise the requisite standard of care while an assumpsit action is based on the theory that an attorney's failure to follow instructions constituted a breach of contract. 418 A.2d at 616.

In *Bailey v. Tucker*, 621 A.2d 108, 115 (Pa. 1993) (involving a criminal representation), the Pennsylvania Supreme Court commented that "an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." The attorney's liability under this claim will be based on the terms of the parties' contract. *Id.* However, the Court refused to allow recovery of consequential damages under this theory and damages were "limited to the amount actually paid for the services plus statutory interest." *Id.* In *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983), the Court created a "narrow" cause of action for named beneficiaries under a will who lost their legacy due to malpractice by the decedent's attorney but refused to allow "contract actions which in fact rely on negligence criteria." *Id.* at 752. In *Kohn, Savett, Klein & Graf, P.C. v. Cohen*, 1990 WL 42244 *5 (E.D. Pa. 1990) (citations omitted), the Court explained the relationship

7

between these two theories:

> Of course, virtually all legal representation occurs within the scope of a contract between lawyer and client. This does not, however, mean that the contractual limitations period automatically applies. Rather, the courts have looked to the terms of the contract allegedly breached and to the nature of the injury asserted. If the damages requested stem from negligence or other tortious misconduct, then the action sounds in tort and the two-year statute of limitations applies. If the damages arise from a breach of an explicit contractual term, and if the request is only for compensatory damages appropriate in contract, then the action sounds in contract.

The *Cohen* Court held that because the malpractice claim was premised on negligent conduct of a case, it sounded in tort. *Id.*; *Accord Storm v. Golden*, 538 A.2d 61, 65 (Pa. Super. 1988) ("appellant's assumpsit claim is not a true contract claim, but sounds in negligence by alleging [that attorney] failed to exercise the appropriate standard of care");*Woods v. Egler*, 2001 WL 1809820 (Ct. Common Pleas Allegheny Cty. Aug. 8, 2001) (no "true breach of contract claim" where gravamen is that lawyer failed to exercise ordinary skill and knowledge).[3] In *IBEW Local 380 Pension Fund v. Buck Consultants*, 2008 WL 269476 (E.D. Pa. January 30, 2008), a sister court recently summarized: "Failure to perform a service with the requisite level of professional care typically constitutes a claim of negligence, not breach of contract." *Id.* at * 9 & n.5 (citations omitted). In *IBEW*, the Plaintiff recognized that its assumpsit-based legal malpractice claim failed as a matter of law because it merely restated its negligence claim and voluntarily withdrew it. *Id.*

In addition, a plaintiff may not repackage a negligence-based malpractice claim under an

---

[3]There is disagreement in the case law as to the requisite specificity of the alleged breach. *Compare Gorski v. Smith*, 812 A.2d 683, 693 (Pa. Super. 2002) (plaintiff need not aver a breach of a specific contractual provision); *with Sherman Indus., Inc. v. Goldhammer*, 683 F. Supp. 502, 506 (E.D. Pa. 1988) (requiring breach of *specific* provision) (emphasis in original).

assumpsit theory to avoid the statute of limitations. As the Court explained in *Goldhammer*, 683 F. Supp. at 506 (citing *Stetson v. Carty*, Civil Action No. 83-6071 (E.D.Pa. July 18, 1984), *aff'd*, 760 F.2d 261 (3d Cir.1985)):

> One important limitation on pleading malpractice claims in Pennsylvania under a contract theory, however, is that a malpractice plaintiff may not sidestep the two-year limitation on tort actions by pleading tort claims as breaches of contract. . . . As Chief Judge Fullam explained in *Stetson*, if allegations of a contractual relationship between plaintiff and defendants, and of an express or implied term of the contract establishing an obligation to exercise reasonable care, were to suffice to state a breach-of-contract malpractice case, the two year limitations statute for tort actions would be a dead letter in ... malpractice cases.

The most factually-analogous case is *Duke & Co.,* 418 A.2d at 613, in which the client instructed its lawyer to file a defamation action and counsel failed to do so. The complaint alleged that counsel agreed he would file "some kind of a notice" and later confirmed that "he was moving forward with it." *Id.* at 614. After the statute of limitations for a tort claim expired, the client learned that no action had ever been filed. The client sought to proceed in assumpsit for nominal damages so that it could avoid having to prove "a claim within a claim," i.e., that the underlying defamation claim was meritorious, and could take advantage of the longer statute of limitations. The Superior Court rejected this effort to repackage what was essentially a tort claim into an assumpsit claim as against public policy. In part, the Court reasoned that if such claims were permissible, "[o]ne probable result would be that an attorney who had agreed to file an action would be hesitant not to file it even though his research had shown that the action was frivolous." *Id.* at 616.[4]

---

[4]*Bailey* and *Duke & Co.* can be harmonized. In *Bailey*, the Supreme Court noted "substantial differences" that warranted separate treatment of civil and criminal malpractice claims and reiterated the concern that the law governing malpractice actions not diminish "counsel's willingness to exercise independent legal judgment." 621 A.2d at 112, 114-15.

C.     Application of Pennsylvania Law to the Amended Complaint

The Court now considers whether the Amended Complaint adequately states a claim for "legal malpractice" against these Defendants under the *Twombly* pleading standard. Construing the allegations in the Amended Complaint broadly, the Court will analyze both the tort and assumpsit theories of legal malpractice, even though Plaintiff has articulated only a tort-based theory. The Amended Complaint does not state a valid claim for legal malpractice against Defendants under either theory.

The sole reference to "legal malpractice" is contained in ¶ 57 of the Amended Complaint, which states, in its entirety:

> Because the actions and omissions of the "malpractice" Defendants (Atty. Ferry and his firm Watts & Pepicelli, and Atty. Cartwright) injured their respective clients, Helen Stacey or Raymond Stacey, Plaintiffs seek damages for those injuries.

This is a perfect illustration of the type of "bare averment that he wants relief and is entitled to it," which was held to be invalid in *Phillips*. A formulaic recitation of the elements of a cause of action, with no supporting factual detail, simply will not suffice. *Id.*[5]

1.     Tort Theory

The Amended Complaint does not set forth a plausible theory of recovery against these Defendants for legal malpractice under a tort theory. As an initial matter, such a claim is untimely. It is undisputed that a two-year statute of limitations applies. The Amended

---

[5]In ¶ 64, the Amended Complaint conclusorily avers that Ferry and Watts & Pepicelli "breached their contractual obligations to Helen Stacey and she was injured thereby." As set forth above, Plaintiff is barred from asserting an independent breach of contract claim, and this averment lends no support to a legal malpractice claim.

Complaint states in ¶¶ 19, 40 that attorney Cartwright, who was engaged *after* Defendants allegedly failed to act, filed a notice of appeal on September 7, 2000. *See also* ¶ 4 (Defendants' alleged conduct occurred during August and September 2000). The original pro se complaint in this case was filed on November 6, 2002, well beyond the two-year statute of limitations period, which commenced in September 2000.

The Amended Complaint also fails to set forth sufficient facts to establish the elements of a legal malpractice claim as set forth in *Kituskie*. There are only the barest, most conclusory allegations regarding the employment of Defendants as the Staceys' attorneys. No engagement letter or contract is attached and there are no averments describing the time, scope or terms of the alleged engagement. The Amended Complaint does not set forth sufficient facts regarding an alleged failure by Defendants to exercise ordinary professional skill and knowledge. The mere failure to file a cause of action, without more, may be "consistent with" wrongful conduct, but it is not "suggestive" of misconduct. *Twombly*, 127 S. Ct. at 1970. Indeed, attorneys have an independent professional obligation as officers of the court to undertake a reasonable investigation prior to filing a lawsuit and to avoid filing frivolous claims. *See* Fed. R. Civ. P. 11(b), Pa. R.C.P. 1023.1- 1023.4*; Duke & Co.*, 418 A.2d at 616.

In addition, the Amended Complaint wholly fails to allege facts from which the causation element might be satisfied. On its face, the Amended Complaint acknowledges that when Defendants allegedly failed to act, "Plaintiffs retained Attorney Cartwright to get the injunction and petition the court to order the City to hold a hearing at the City appeals board." Amended Complaint ¶ 19. Cartwright filed an action on September 7, 2000, and a final hearing was not held until November 6, 2000. Paragraph 45 avers that Cartwright failed to attend the final

11

hearing on November 6, 2000, failed to perfect the notice of appeal, and failed to secure an appellate stay. There are no allegations to support how the instant Defendants' earlier alleged conduct could have been the proximate cause of Plaintiff's damages after Cartwright had been engaged. Similarly, the Amended Complaint is silent as to how Defendants' alleged breach of a professional duty caused "actual loss" rather than nominal damages, speculative harm or the threat of future harm. *Kituskie,* 714 A.2d at 1030.

Moreover, on the face of the Amended Complaint, it is exceedingly unlikely that Plaintiff would be able to prove the "case within the case." Paragraph 53 of the Amended Complaint concedes that the Stacey home was "egregiously nonconforming under the City's zoning law." Assuming arguendo that Defendants had filed a trespass action or an injunction, the Amended Complaint does not explain how that underlying action would have the merit to succeed. In summary, the Amended Complaint fails to allege a plausible tort-based legal malpractice claim against these Defendants.

2. Assumpsit Theory

Likewise, the Amended Complaint does not set forth a valid assumpsit-based theory of legal malpractice. As an initial matter, Plaintiff has not alleged the basic essentials of an enforceable agreement, i.e., offer, acceptance and consideration. On the face of the Amended Complaint, it is apparent that the parties did ***not*** agree as to the pursuit an injunction or trespass action against the City. Paragraph 33 avers that Stacey "asked" Defendants to perform those activities and ¶ 18 avers that Defendants "refused" to do so. *Compare Duke & Co.*, 418 A.2d at 614 (dismissing claim despite allegation that counsel agreed he would file "some kind of a

12

notice" and told plaintiff "he was moving forward with it"). There is only a bare averment in ¶ 18 that "Defendants were retained" without any explanation of the terms of the alleged engagement. There is no averment regarding adequate consideration. Indeed, the Amended Complaint does not allege that the Staceys ever paid Defendants to perform as counsel.[6] Thus, the Amended Complaint does not establish an agreement between the parties.

In addition, the Amended Complaint fails to allege how Defendants' conduct purportedly breached the parties' alleged agreement. As explained above, the mere refusal to file a lawsuit is not "suggestive" of a failure to provide a client with professional services consistent with those expected of the profession at large. Moreover, an assumpsit-based legal malpractice claim suffers from many of the same flaws as the tort-based claim articulated above. The Amended Complaint is silent as to how Defendants' alleged conduct caused any of the Staceys' claimed damages. Indeed, on the face of the Amended Complaint, it is implausible that Defendants caused Plaintiffs to suffer any damages, insofar as attorney Cartwright was immediately engaged. The gravamen of the Amended Complaint is that Defendants failed to exercise the appropriate standard of care and Plaintiff cannot repackage the claim under an assumpsit theory to avoid the obligation to prove a "case within a case" or to avoid the two-year statute of limitations.

In sum, the Amended Complaint fails to state a claim for "legal malpractice" under any theory. Indeed, it falls far short of the applicable standard.

---

[6]Assuming, arguendo, that the assumpsit claim recognized in *Bailey* applies in the civil context, the Amended Complaint fails to state a claim because damages under such a claim are limited to the amount paid.

Conclusion

In accordance with the foregoing, Defendants Christopher Ferry and Watts & Pepicelli, Attorneys at Law will be dismissed from the case. The Amended Complaint does not contain sufficient factual matter (taken as true) to raise a reasonable expectation that discovery will reveal evidence of all the necessary elements of a "legal malpractice" claim and Plaintiff is barred from asserting any other claims against Defendants.

The Court recognizes that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, leave to amend is properly denied on the grounds of "undue delay, bad faith, dilatory motive, prejudice, and futility." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir.2000). Plaintiff has had numerous opportunities to assert a cognizable claim of legal malpractice against Defendants. Indeed, the Court of Appeals and this Court specifically instructed Plaintiff to plead "legal malpractice claims against the Staceys' attorneys." For the reasons set forth above, despite being given this additional opportunity, Plaintiff has failed to state a valid claim in the Amended Complaint and there is no reasonable prospect that the flaws are curable. Accordingly, leave to amend, so that Plaintiff may make a fifth attempt to assert a legal malpractice claim against Defendants, is denied on the grounds of futility, undue delay, dilatory motive and prejudice, for the reasons set forth above and as more fully explained in the Memorandum Opinion dated January 31, 2008.

The caption will be modified accordingly, as follows:

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND STACEY, Individually and as Co-Executor of the Last Will of Helen Stacey,<br>           Plaintiff,<br>    v.<br><br>CITY OF HERMITAGE; GARY P. HINKSON, Individually; EDWARD STANTON, Individually; RUSSELL V. PENN, JR., Individually; JEFFREY OSBORNE, Individually; ROBERT S. GOELTZ, Individually; JAMES PAT WHITE, Individually; THOMAS W. KUSTER; H. WILLIAM WHITE; III; JERRY G. CARTWRIGHT, JR., Attorney at Law; and RICHARD SEREDAY, ROSEANN SEREDAY, doing business as SEREDAY EXCAVATING;<br>           Defendants. | 2:02-cv-1911 |

In conclusion, DEFENDANTS', CHRISTOPHER FERRY AND WATTS & PEPICELLI, MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b) (*Document No. 147*) is **GRANTED**.

SO ORDERED this 7th day of April, 2008.

                              BY THE COURT:

                              s/ Terrence F. McVerry
                              United States District Court Judge

cc: Janice Haagensen, Esquire
Email: janhaagensen@aol.com

CITY OF HERMITAGE and CITY INDIVIDUAL DEFENDANTS
Neva L. Stanger, Esquire
Email: nstanger@cdblaw.com

CHRISTOPHER FERRY and WATTS & PEPICELLI
WATTS & PEPICELLI
Theodore H. Watts, Esquire
Email: eagle916@zoominternet.net
Alan L. Pepicelli, Esquire
Email: apepicelli@zoominternet.net

JERRY G. CARTWRIGHT, JR., Attorney at Law
Jerry G. Cartwright, Jr., Esquire
Email: watson1_1@yahoo.com

RICHARD SEREDAY and ROSEANN SEREDAY
doing Business as SEREDAY EXCAVTING
Phillip R. Earnest, Esquire
Email: pearnest@rlmlawfirm.com

VIROSTICK TRANSFER CO
thru its Owners, Employees and Agents
Adam M. Barnes, Esquire
abarnes@wcblaw.net