IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND STACEY, Individually and as Co-Executor of the Last Will of Helen Stacey, Plaintiff, <br> v. <br><br> CITY OF HERMITAGE; GARY P. HINKSON, Individually; EDWARD STANTON, Individually; RUSSELL V. PENN, JR., Individually; JEFFREY OSBORNE, Individually; ROBERT S. GOELTZ, Individually; JAMES PAT WHITE, Individually; THOMAS W. KUSTER; H. WILLIAM WHITE, III; RICHARD SEREDAY, ROSEANN SEREDAY, doing business as SEREDAY EXCAVATING, <br><br> Defendants. | 2:02-cv-1911 |

## MEMORANDUM OPINION AND ORDER

Pending before the Court for consideration and disposition are the MOTION FOR SUMMARY JUDGMENT (Document No. 171) filed by Defendants Richard and Roseann Sereday d/b/a Sereday Excavating ("Sereday"), and DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Document No. 174) filed by the City of Hermitage, Gary P. Hinkson, Edward Stanton, Russell V. Penn, Jr., Jeffrey Osborne, Robert S. Goeltz, James Pat White, Thomas W. Kuster, and H. William White, III (collectively, the "City Defendants"). Defendants filed supporting statements of material fact and memoranda of law (Document Nos. 172-180). Stacey filed Plaintiff's Responsive Concise Statement to Defendants' Concise Statements of Material Facts and an Appendix (Document Nos. 186, 187). The summary judgment motions are ripe for disposition.[1] Also pending is DEFENDANTS' MOTION FOR

---

[1]On January 5, 2009, the Court granted Plaintiff's motion for extension of time and instructed that "Plaintiffs' response to the Defendants' Motions for Summary Judgment and seriatim reply to the statement of undisputed material facts *with accompanying brief* shall be due by February 11, 2009." (Emphasis added). Plaintiff did not file a timely "accompanying brief."

SANCTIONS (Document No. 183) filed by the City Defendants, which will be addressed separately.

Procedural History

This case arose from the condemnation and subsequent demolition of the home of Helen Stacey, Plaintiff's mother, in November 2000 – over eight years ago. The case has been embroiled in extensive legal wrangling and the entire procedural history is well known to all involved and will not be reiterated.

The original pro se complaint was dismissed in 2003 by the Honorable Robert J. Cindrich. On November 24, 2004, the United States Court of Appeals for the Third Circuit ("Court of Appeals") affirmed this order in part and vacated in part. On October 11, 2005, the United States Supreme Court vacated the ruling of the Court of Appeals as to the *Rooker-Feldman* doctrine and remanded to the Court of Appeals for further consideration. On April 19, 2006, the Court of Appeals issued a second opinion ("*Stacey II*") which affirmed in part and vacated in part the district court's original order of dismissal and remanded for further proceedings consistent with its Opinion. *Stacey II* held that some, but not all, of Defendants' asserted grounds for dismissal had merit, Opinion at 8, and concluded that the ***only claims*** which survived the motions to dismiss were:

> (1) claims under § 1983 against the City defendants and Sereday arising from the

---

Without seeking an extension of time, Plaintiff's counsel filed an untimely Memorandum in Opposition on February 26, 2009 (Document No. 191). Although Plaintiff's counsel has once again failed to comply with this Court's policies and procedures and an explicit Order, the Court will reluctantly consider the untimely brief and the exhibits attached thereto. The City Defendants filed a reply and brief on March 5, 2009 (Document Nos. 192, 193).

> demolition; (2) claims under § 1983 against the City defendants arising from the imposition of the lien against the Stacey property; and (3) legal malpractice claims against the Staceys' attorneys.

Opinion at 14 (emphasis added).

Further procedural skirmishing continued after the case was remanded, in which additional Defendants and claims were dismissed. On May 9, 2008, the Court entered a Case Management/Scheduling Order ("CMO") that established a discovery deadline of November 10, 2008. Although the case was approximately five years old, the parties were granted six months to complete discovery. Defendants engaged in such discovery.

Plaintiff recognized that the evidence to be obtained in discovery was crucial and necessary to support his allegations. The Amended Complaint ¶ 66, states, in relevant part:

> Without discovery, Plaintiff Raymond Stacey cannot plead with greater particularity at this time, so he cannot set forth exactly how each defendant acted in concert with the others in infringing upon his and his mother's constitutional rights. Information crucial to proof of these claims is in the custody and control of the Defendants. . . . Plaintiff Stacey relies on liberal federal discovery rules to define all disputed facts and issues. Any expectation of complete factual sufficiency without discovery is premature or impossible.

Nevertheless, when the time to undertake such discovery finally presented itself, Plaintiff wholly failed to take advantage of the opportunity. In fact, Plaintiff initiated ***no*** timely discovery whatsoever. Plaintiff's counsel did not take any depositions and did not file any discovery requests "within sufficient time to allow responses to be completed and depositions taken prior to the close of discovery." Plaintiff's counsel provided no excuse or good cause justification for her inaction. Unfortunately, this conduct was consistent with the approach of Plaintiff's counsel

throughout this litigation.[2] On November 12, 2008, the Court denied Plaintiff's motion to extend the discovery deadline.

In response to Defendants' motions for summary judgment, Plaintiff has offered the "Declaration of Plaintiff Raymond Stacey" and exhibits attached thereto. Stacey's Declaration essentially repeats the allegations in the complaint.[3] Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment. In order to satisfy the standard for summary judgment "the affiant must ordinarily set forth facts, rather than opinions or conclusions. An affidavit that is 'essentially conclusory' and lacking in specific facts is inadequate to satisfy the movant [or non-movant]'s burden." *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) (citation omitted).

Plaintiff has also submitted the complete transcript of the deposition of Raymond Stacey and an Appendix containing, among other exhibits, a state court docket sheet, the City of Hermitage Property Maintenance Code, attorney time sheets, and various letters and newspaper articles. Generalized references to entire deposition transcripts do not satisfy a litigant's burden to oppose a motion for summary judgment. *See Barnes Foundation v. Township of Lower*

---

[2]On January 31, 2008, the Court isssued a Memorandum Opinion which observed, in relevant part:

> Moreover, the procedural history of this case is replete with efforts by Plaintiff to stay or suspend the proceedings, to take improper appeals, to unilaterally assert claims that were specifically barred by this Court and the Court of Appeals, and to generally prolong this case in derogation of the principles articulated in Fed. R. Civ. P. 1.

[3]*See* Declaration at 3: "All these facts support the Stacey claims occurring on or after November 6, 2000 which are described in the Amended Complaint, filed September 15, 2006 (Doc. No. 128), which is incorporated here by reference as if fully set forth and repeated."

*Merion*, 982 F. Supp. 970, 986 n.9 (E.D. Pa. 1997). In an abundance of caution, however, the Court has reviewed the entire deposition transcript of Raymond Stacey. Newspaper articles usually constitute inadmissible hearsay which cannot be used to defeat summary judgment. *Id.* at 996. In *Barnes*, the Court granted Defendants' motion for summary judgment on a § 1983 conspiracy claim due to Plaintiff's lack of evidence and commented that the record "merely details various stages of a run of the mill land dispute." *Id.* at 987. The Court commented that municipalities should not have to face a civil rights trial any time a citizen loses a battle in a zoning dispute. *Id.*

The current status of Plaintiff's evidence is best illustrated by the following quote from Raymond Stacey's deposition testimony (Day 2) at 37, which was quoted by ***Plaintiff*** in Plaintiffs' Responsive Concise Statement to Defendants' Concise Statements of Material Fact at 16 (emphasis added): "It was done in secret. ***I have no idea what went on.*** That's what a conspiracy is, something done in secret."

Factual Background

Defendants set forth the following evidence of record, which for the most part is admitted by Plaintiff.[4] This case arises from the demolition of a residence at 1560 East State Street, Hermitage, Pennsylvania (the "Stacey Home") on November 6, 2000. The saga began in June 1997 when Raymond Stacey contacted the City of Hermitage Fire Department because extensive stormwater runoff flooded the basement of the Stacey Home. The Stacey Home was declared

---

[4]The Court will not consider comments made by Plaintiff's counsel in response to Defendants' Concise Statements of Material Fact that are not supported by citation to the evidentiary record. L.R. 56.1.

5

structurally unsafe by the building inspector and fire marshal. In July 1997, a warning was posted on the Stacey Home followed by a letter to the Staceys stating that the Stacey Home was considered to be a "dilapidated structure" under the City's ordinance, which must be repaired or demolished. In September 1997, the Staceys were given a Notice of Demolition and advised to remove their personal property from the Stacey Home.

In October 1997, a letter was sent to the Stacey children in an attempt to determine the family's intention and to provide an extension of time to effect repairs. The children, Robert and Raymond Stacey and Marianne Uhl, each removed certain items from the home. Plaintiff Raymond Stacey decided NOT to remove other items from the Stacey Home but to instead "fight the City to the ground."[5] Although Raymond Stacey removed newspapers that had been stacked from floor to ceiling, among the items he decided to leave in the Stacey Home were comic books which he claimed were worth $187,000. In November 1997, a Complaint to Abate the Nuisance was filed by the City in the Court of Common Pleas of Mercer County, Pennsylvania.

Apparently, an uneventful interlude occurred, which lasted until December 1998 when a letter was sent to Helen Stacey to notify her of numerous violations of the City's newly-enacted Property Maintenance Code. In January 1999, the Staceys appealed the Code Officer's determination to the Board of Appeals. In April 1999, the Board of Appeals held a hearing at which the Staceys were provided an opportunity to testify and present witnesses and exhibits regarding the status of the Stacey Home as a "dilapidated structure" and public nuisance.

On May 9, 1999, the Board of Appeals issued an opinion affirming the Code Officer's determination. R. 56-66. The Staceys appealed the Board's decision to the Court of Common

---

[5]This statement is deemed admitted because Plaintiff did not respond. L.R. 56.1.

Pleas of Mercer County. On April 24, 2000, the Court of Common Pleas affirmed the Board's decision in all respects except as to whether the Stacey Home was a fire hazard. In particular, the Court of Common Pleas found that the evidence presented to the Board of Appeals was sufficient to support the conclusions of the Board that the structure was an attractive nuisance, was unsafe for human habitation, was not capable of supporting imposed loads, and was an unsafe public nuisance.

In May 2000, Plaintiff sent a letter to his attorney stating that his mother did not want to appeal and would consider selling, but noted that in the meantime he was going to contact an amish contractor to repair the Stacey Home. In June 2000, the Staceys filled the basement of the Stacey Home with river bottom soil. However, this was determined to be insufficient to resolve the structural deficiencies of the Stacey Home.

On July 5, 2000, a Notice of Demolition was sent to Mrs. Stacey and her attorney, Christopher Ferry. The Staceys were given a deadline of July 28 to remove personal property and demolition was scheduled for August 1, 2000. On July 27, 2000, a final Notice of Demolition was sent to Mrs. Stacey and her attorney. Raymond and Helen Stacey requested extensions of time. The City granted an extension until August 17, 2000 to remove personal property and rescheduled the demolition for August 28. On August 3, 2008, Mrs. Stacey indicated that they were removing personal property. On August 23, 2008, the City reiterated that it would proceed with demolition on or soon after August 28.

On August 30, 2000, Mrs. Stacey filed a petition for a temporary injunction in the Court of Common Pleas of Mercer County. After a hearing, the temporary injunction was granted. On August 31, 2000, the City hired a transfer company to remove items from the Stacey Home. On

September 5, 2000, a trial was held regarding Mrs. Stacey's complaint, after which the Mercer County Court issued a Decree Nisi which denied the complaint and request for injunctive relief.

On November 6, 2000, the Decree Nisi was made final by the Court of Common Pleas. Either the same afternoon or the following day, the Stacey Home was demolished by the Sereday Defendants. The Seredays had submitted a bid to the City along with several other companies and were selected as the low bidder. On November 8, 2000, the City sent a letter to Jerry Cartwright, attorney for Raymond Stacey, indicating that Stacey could retrieve personal property which had been removed from the Stacey Home prior to the demolition by contacting Virostick Transfer Company.

In December 2000, Mrs. Stacey filed an appeal from the November 6 Order. On January 17, 2001, Judge Dobson of the Court of Common Pleas issued a written opinion pursuant to Pa. R. App. P. 1925 to memorialize the November 6 Order. Judge Dobson explained, among other things, that there was no requirement that appeal rights be set forth in a demolition notice; that Mrs. Stacey was not entitled to a hearing before the Board of Appeals because she failed to file a timely application for appeal; that the City did not act in an arbitrary and capricious manner; that the demolition of the Stacey Home was proper; and that the Court did not rely only upon the City Inspector and his assistant in rendering its decision.

In March 2001, the City advised counsel for the Staceys that their personal property was still being held at Virostick Transfer Company. In September 2001, the City informed counsel for Plaintiff that it would no longer continue to pay the storage fee. The Stacey personal property is still being held by Virostick and Plaintiff has made no effort to retrieve it. Instead, Plaintiff apparently believes that Defendants have a duty to deliver the personal property to him.

In March 2001, the City filed a Municipal Claim and lien in the amount of $13,570.10 in an effort to recover amounts expended during the demolition process. The lien was filed pursuant to the Pennsylvania Municipal Claims and Tax Liens Act, 53 P.S. § 7101 et seq. The Staceys did not rebut these amounts.

On November 8, 2001, the Pennsylvania Commonwealth Court affirmed the November 6, 2000 decision of the Mercer County Court of Common Pleas. The Commonwealth Court held that Mrs. Stacey could not challenge the Board of Appeals' decision that the Stacey Home was an attractive nuisance unsafe for human habitation, that she was not entitled to a hearing on the proposed demolition, that the Staceys had three years' notice of violations and were not denied the opportunity to sell the home or remove personal property, that they were afforded due process, and that the trial court did not err in determining that demolition was the appropriate remedy. Both the Pennsylvania Supreme Court and United States Supreme Court declined to review the decision of the Commonwealth Court.

Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there

can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in the light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. Rather, the non-

moving party must set forth facts sufficient to establish the essential elements of that party's case. *Celotex,* 477 U.S. at 322. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

There is a significant difference between allegations in a complaint that may survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) – particularly under the "any set of facts" standard that prevailed prior to *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) – and the quantum of evidence that must be presented in order to defeat a motion for summary judgment. The summary judgment stage of the case is "put up or shut up" time – the non-moving party must rebut the motion with "facts in the record" rather than allegations in pleadings or argument by counsel. *Berckeley Inv. Group v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

As recently summarized in *Stinebaugh v. Eldorado Stone, LLC*, 2008 WL 144211 (M.D. Pa. 2008):

> Under the standard of review governing motions for summary judgment, the Plaintiffs bear the burden of proffering evidence of record, beyond mere speculation, to support these allegations. *See, e.g., Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir.2005) ("Speculation does not create a genuine issue of material fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."); *Jones*, 214 F.3d at 407 ("At summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir.1972) ("[C]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment.").

The lack of evidence developed by Plaintiff dictates the result in this case. Plaintiff, in his deposition, admitted that he has "no idea what went on" with the alleged conspiracy. Plaintiff

11

recognized in the Amended Complaint that discovery would be crucial to support his claims yet chose not to conduct any discovery whatsoever. As a consequence, he offers only unsubstantiated, conclusory allegations of an implausible conspiracy involving not only the remaining Defendants but also the Staceys' own attorneys and the state court judge.

Legal Analysis

To succeed on a claim under Section 1983, 42 U.S.C. § 1983, a plaintiff must show two elements: (1) that a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 itself provides no substantive rights, but only serves as a vehicle "for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In this case, Plaintiff asserts underlying constitutional claims for denial of access to the courts,[6] unreasonable seizure, and lack of procedural and substantive due process under the First, Fourth and Fourteenth Amendments to the United States Constitution.

Liability cannot be established against a municipality unless Plaintiff can establish a policy or custom that caused the alleged constitutional violation. *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). In order to establish liability against an individual, Plaintiff must prove that the defendant had personal involvement in the alleged

---

[6]Plaintiff's counsel asks rhetorically: "why is there no entry that day on the docket for the money paid, and why is Defendant White calling it a 'judgment' prematurely when the final order was not actually issued until three days later on November 6?" Memorandum in Opposition at 12. These are the types of questions that could and should have been pursued by Plaintiff during discovery.

12

wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). In order to demonstrate a § 1983 conspiracy, Plaintiff must show that two or more persons reached an agreement to deprive him of a constitutional right under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). In *Warren v. Gelardi*, 2009 WL 113450 (D.N.J. 2009) (granting summary judgment as to conclusory allegation of § 1983 conspiracy), the Court explained: "Agreement is the sine qua non of a conspiracy. To state a claim for conspiracy under § 1983, a plaintiff must make factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." *Id.* at *12 (citation omitted).

1.   Claims vs. the Seredays

The Court of Appeals for the Third Circuit held in *Stacey II* that only the § 1983 claim against the Seredays survived the motions to dismiss. The Seredays have argued throughout the litigation that they are a private demolition contractor and not a state actor. In *Stacey II*, the Court of Appeals noted that the relationship (or lack thereof) between Sereday and the City was appropriately raised at the summary judgment stage. As explained in *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993) (citation omitted):

> Although it is possible for a private party to violate an individual's § 1983 rights, the individual alleging such a violation is not relieved of the obligation to establish that the private party acted under color of state law. [T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action [of the private party] so that the action of the latter may be fairly treated as that of the State itself.

The Seredays have now accurately pointed out that there is a complete dearth of evidence with

respect to the "state action" element of Plaintiff's claims against them.[7] Plaintiff has simply failed to produce any evidence to support the allegation that the Seredays became state actors and thus cannot succeed on a claim under § 1983.

In any event, the Seredays correctly argue that their conduct cannot be attributed to the state under the traditional government/public function test, the symbiotic relationship test or the close nexus test. *See Sershen v. Cholish*, 2008 WL 598111 (M.D. Pa. 2008). Further, the Seredays are correct that there is no evidence of an agreement or concerted action to violate Plaintiff's constitutional rights, as necessary to prove a conspiracy. From the record, it appears that Defendants were proceeding with a contentious and adversarial demolition in accordance with the Property Maintenance Code. Finally, the Seredays persuasively point out that the dispute over the Stacey Home had been ongoing for approximately three years prior to their involvement and that their fulfillment of the demolition contract was not the proximate cause of Plaintiff's alleged injuries as the property would have been demolished regardless of which contractor submitted the lowest bid. In sum, the Seredays are entitled to summary judgment on numerous grounds.

   2.   Claims vs. the City Defendants

As set forth by the Court of Appeals in *Stacey II*, the only claims against the City Defendants that survived the motions to dismiss are claims under § 1983 arising from the demolition and from the imposition of the lien against the Stacey property. Defendants argue that Plaintiff's failure to conduct discovery has resulted in a deficient factual record, such that

---

[7]Plaintiff's Memorandum in Opposition did not address the Seredays' arguments.

summary dismissal is warranted. The Court agrees with Defendants.

There is a complete absence of evidentiary support and all Plaintiff offers is his own admittedly uninformed speculation regarding the alleged conspiracy to demolish the Stacey Home in violation of his constitutional rights. Plaintiff's claims arising out of imposition of a lien against the Stacey Home are similarly flawed. Pursuant to Pennsylvania state law, 53 P.S. §§ 7107, 37403(16), a municipality is entitled to remove a nuisance or dangerous structure and file a lien against that property. Separate notice of the lien is not constitutionally required and, in any event, the Staceys did receive appropriate notice. At his deposition, Raymond Stacey did not provide any basis for his contention that the amount of the lien exceeded the actual demolition costs, but rather, argued that he should not have had to pay any lien whatsoever.

Defendants advance several other meritorious arguments. As noted above, there is no evidence of an agreement or concerted action necessary to establish a § 1983 conspiracy. The Court of Appeals has already determined that § 1983 claims arising out of events prior to November 6, 2000 are time-barred. Plaintiff's argument that Defendants violated substantive or procedural due process and/or the Fourth Amendment by seizing the property without a warrant or court order is without merit. *See Freeman v. City of Dallas*, 242 F.3d 642, 652-55 (5th Cir. 2001) (rejecting similar due process and Fourth Amendment challenges where City adhered to procedures set forth in ordinance to abate nuisance).[8] The Court notes that the Stacey Home had been vacant for a considerable period of time and that the issues regarding Plaintiff's procedural

---

[8]The Court need not reach Defendants' argument that a substantive due process claim is barred by the availability of a Fourth Amendment remedy as neither claim is meritorious. To the extent that Plaintiff were, arguendo, able to establish a constitutional violation, it would certainly not be so clearly established as to deprive the individual Defendants of qualified immunity.

rights were litigated in the state courts. Put simply, the City was legally authorized to abate the nuisance by demolishing the Stacey Home pursuant to the Property Maintenance Code, despite the opposition of the family.

It is undisputed that the City of Hermitage demolished the Stacey Home pursuant to the Hermitage Property Maintenance Code.[9] In his Declaration, Raymond Stacey opines that the Property Maintenance Code is unconstitutional on its face and in application. However, this argument is not presented in Plaintiff's Memorandum of Law and in any event, a claim that the demolition, per se, violated Plaintiff's constitutional rights would be frivolous. It is well-established that a municipality has the right to remove a structure that constitutes a nuisance or danger. See *Keystone Bituminous Coal Ass'n. v. DeBenedictis*, 480 U.S. 470, 491-92 (1987) (holding that abating a public nuisance is not a taking under the Fifth Amendment because "[l]ong ago it was recognized that 'all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community'"); *Burton v. Borough of Dormont*, 437 A.2d 532 (Pa. Commw. 1981) (discussing municipality's power to abate nuisances).

It is equally undisputed that the demolition of the Stacey Home occurred after a several year process and that the issues surrounding the demolition were thoroughly litigated in the state court system. Indeed, the Stacey Declaration acknowledges that the demolition occurred after a final order was entered in the Court of Common Pleas of Mercer County, which denied the Staceys' motion for an injunction. As the Court noted in *Barnes*, the exhibits submitted by

---

[9]Plaintiff recognizes that Property Maintenance Code § 110.3 authorizes the municipality to raze and remove a structure where the owner has failed to comply with a demolition order.

Plaintiff do no more than illustrate the various stages of a "run of the mill" demolition dispute. 982 F. Supp. at 987. A § 1983 lawsuit is not appropriately used to re-litigate such claims. *See, e.g., Casagrande v. Agoritsas*, 748 F.2d 47, 48 (1st Cir. 1984) (having lost in state court, Plaintiffs may not relitigate those issues in federal court under § 1983). Indeed, a fair reading of the Amended Complaint demonstrates that Plaintiff is <u>not</u> attempting to simply re-litigate the state court claims, but instead, is alleging that the entire state court process constituted an elaborate conspiracy. Plaintiff has failed to adduce any evidence of such a conspiracy and the City Defendants are entitled to summary judgment.

      An appropriate Order follows.


McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND STACEY, Individually and as Co-Executor of the Last Will of Helen Stacey, <br> Plaintiff, <br> v. <br><br> CITY OF HERMITAGE; GARY P. HINKSON, Individually; EDWARD STANTON, Individually; RUSSELL V. PENN, JR., Individually; JEFFREY OSBORNE, Individually; ROBERT S. GOELTZ, Individually; JAMES PAT WHITE, Individually; THOMAS W. KUSTER; H. WILLIAM WHITE, III; RICHARD SEREDAY, ROSEANN SEREDAY, doing business as SEREDAY EXCAVATING, <br><br> Defendants. | 2:02-cv-1911 |

## ORDER OF COURT

AND NOW this 11th day of March, 2009, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that:

(1) the MOTION FOR SUMMARY JUDGMENT (Document No. 171) filed by Defendants Richard and Roseann Sereday d/b/a Sereday Excavating is **GRANTED**; and

(2) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Document No. 174) filed by the City of Hermitage, Gary P. Hinkson, Edward Stanton, Russell V. Penn, Jr., Jeffrey Osborne, Robert S. Goeltz, James Pat White, Thomas W. Kuster, and H. William White, III is **GRANTED**.

The clerk is instructed to docket this case closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:     Janice Haagensen, Esquire
        Email: janhaagensen@aol.com

CITY OF HERMITAGE and CITY INDIVIDUAL DEFENDANTS
        Neva L. Stanger, Esquire
        Email: nstanger@cdblaw.com


RICHARD SEREDAY and ROSEANN SEREDAY
doing Business as SEREDAY EXCAVTING
        Phillip R. Earnest, Esquire
        Email: pearnest@rlmlawfirm.com